UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GEFT OUTDOOR, L.L.C. | ) | |
| Plaintiff | ) | |
| v. | ) | CASE NO. 1:22-cv-261 |
| CONSOLIDATED CITY OF INDIANAPOLIS AND COUNTY OF MARION INDIANA, DEPARTMENT OF METROPOLITAN DEVELOPMENT, AND METROPOLITAN BOARD OF ZONING APPEALS | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, PERMANENT INJUNCTION, AND VERIFIED PETITION FOR JUDICIAL REVIEW**

Plaintiff, GEFT OUTDOOR, L.L.C. ("Plaintiff" or "GEFT"), by counsel, for its Complaint for Damages, Declaratory Relief, Permanent Injunction, and Petition for Judicial Review against Defendants Consolidated City of Indianapolis and County of Marion, Indiana, ("Indianapolis") Department of Metropolitan Development ("DMD"), and Metropolitan Board of Zoning Appeals ("BZA") (collectively, "Defendants"), states as follows:

## INTRODUCTION

1. Indianapolis has enacted Code of Ordinances ("Marion County Ordinance"), which, among other things, regulates land use (including the erection of signs) in Indianapolis. Through this lawsuit, among other things, GEFT seeks to enjoin the Defendants from further restraining GEFT's First Amendment rights through continued application of the unconstitutional provisions of the Marion County Ordinance.

2. The Marion County Ordinance contains impermissible prior restraints on GEFT's First Amendment rights. Those impermissible prior restraints provided the BZA with unconstitutionally unbridled discretion to deny GEFT's request for variances. Indianapolis and its BZA have sole statutory authority to decide on variances like this. The unconstitutionality of Marion County Ordinance is abundantly clear.

## PARTIES

3. GEFT is a domestic limited liability company, organized and existing under the laws of the State of Indiana.

4. GEFT has a principal place of business in the City of Indianapolis, Marion County, State of Indiana. GEFT's address is 1075 Broad Ripple Avenue, #222, Indianapolis, Indiana, 46220.

5. At all times relevant herein, Indianapolis was and remains a city, organized and existing under the laws of and within the State of Indiana, and authorized to sue and be sued.

6. At all times and for all actions relevant herein, Indianapolis acted under color of state law; that is, under color of the United States Constitution, Indiana Constitution, statutes, laws, charter, ordinances, rules, regulations, customs, and usages of the State of Indiana and Indianapolis.

7. The BZA is a citizen board of Indianapolis and was created in accordance with the provisions of Ind. Code § 36-7-4-901 and Ind. Code § 36-7-4-201. The BZA is responsible for, among other things, approving or denying applications for variances, special exceptions, special uses, contingent uses, and conditional uses of the zoning ordinance. The BZA conducts its meetings and is based in the Indianapolis City-County Building at 200 East Washington Street, Indianapolis, Indiana 46204.

## JURISDICTION

8. Plaintiff's claims arise under 42 U.S.C. § 1983 and 28 U.S.C. § 2201. The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§1331, 1343(a)(3), and 1367, the First Amendment and Fourteenth Amendment of the United States Constitution, and Article I, §§ 9 and 23 of the Indiana Constitution. GEFT's Indiana law claims are within this Court's jurisdiction based on GEFT asserting claims under federal law. GEFT's Indiana law claim arises from the same underlying controversy as that invoking federal question jurisdiction. Consequently, exercising supplemental jurisdiction over GEFT's Indiana law claims is proper. *See* 28 U.S.C. § 1367(a); *see also Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 522 (7th Cir. 2003).

9. Venue is proper in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff's claims against Defendants arose in this District.

10. Defendants are subject to the personal jurisdiction of this Court because Indianapolis is a city located within the State of Indiana and the BZA is a department of Indianapolis.

## FACTUAL BACKGROUND

11. GEFT is in the business of buying or leasing land upon which to construct, maintain, and/or operate signs to be used for the dissemination of both commercial and noncommercial speech.

12. EAP, LLC is the owner of property known as 3451 Developer's Road, Indianapolis, Indiana, Local Parcel #5043745 ("Developer's Property"). Ronald L. Page and Georgia M. Page are the owners of 2131 N. Sherman Drive, Indianapolis, IN 46218 ("Sherman Property"). Van's Carburetor and Electric, Inc. is the owner of property known as 1091 Kentucky Ave, Local Parcel # 1099337, Indianapolis, IN 46221 ("Kentucky Ave Property")(collectively the "Properties").

13. On June 25, 2021, EAP, LLC authorized GEFT to file land development petitions necessary for operation of a digital billboard at the Developer's Property.

14. On June 21, 2021, Ronald L. Page and Georgia M. Page authorized GEFT to file land development petitions necessary for operation of a digital billboard at the Sherman Property.

15. On June 30, 2021, Van's Carburetor and Electric, Inc. authorized GEFT to file land development petitions necessary for operation of a digital billboard at the Kentucky Ave Property.

16. GEFT plans to own and operate off-premises digital advertising billboards at the Properties. Any digital advertising billboard at the Properties must be erected pursuant to and consistent with the State of Indiana's regulations governing Digital Billboards (defined *infra*).

**GEFT'S SIGNS**

17. On the Developer's Property, GEFT desires to erect a 70-foot, double-sided, back-to-back billboard, with digital displays on both sides ("Developer's Property Digital Billboard").

18. On the Sherman Property, GEFT desires to erect a 70-foot, double-sided, back-to-back billboard, with digital displays on both sides ("Sherman Property Digital Billboard")

19. On the Kentucky Ave Property, GEFT desires to erect a 70-foot, double-sided, back-to-back billboard, with digital displays on both sides ("Kentucky Ave Digital Billboard") (the Developer's Property Digital Billboard, Sherman Property Digital Billboard, and Kentucky Ave Property Digital Billboard shall be collectively referred to as the "Digital Billboards").

20. GEFT has filed permit applications with the Indiana Department of Transportation ("INDOT") for each of the Digital Billboards.

21. GEFT intends to display both commercial and noncommercial speech on the Digital Billboards pursuant to and consistent with the State of Indiana's regulations governing the Digital Billboards.

22. GEFT has a right to erect the Digital Billboard under the terms of its leases.

23. The Marion County Ordinance unconstitutionally precludes GEFT from erecting its Digital Billboards.

**THE SIGN STANDARDS**

24. Chapter 744-901, *et. seq.*, of the Marion County Ordinance (generally, the "Marion County Ordinance") purports to set forth standards and other requirements for most Signs located within Marion County (the "Marion County Sign Standards").

25. One of the purported purposes of the Sign Standards is "to promote public health, safety, morals and general welfare." (Marion County Ordinance, § 744-901).

26. Under the Marion County Sign Standards, a "Sign" is defined as "[a]ny structure, fixture, placard, announcement, declaration, device, demonstration or insignia used for direction, information, identification or to advertise or promote any business, product, goods, activity, services or any interests." (Id., § 744-902).

27. Marion County Ordinance § 744-903 provides that "[a]ny Sign not exempted from the requirements of obtaining an Improvement Location Permit (ILP) as noted in Section 744-903(E) shall be required to obtain an ILP . . . This provision shall not be construed to require an ILP for the changing of a Sign face on a Sign for which an ILP has previously been issued, except that an ILP is required for the changing of a Sign face from a static face to a digital display" ("Permit Requirement"). (Id., § 744-903).

28. Thus, to erect a Sign in Marion County, a person or entity must have an ILP or a variance, unless the Sign is exempt.

29. A billboard, like the Digital Billboards at issue in this case, are Signs, as that term is defined in the Marion County Sign Standards.

**DIGITAL BILLBOARD BAN**

30. Certain types of billboards are not allowed in Marion County unless exempted or otherwise allowed.

31. Section 744-911.A of the Marion County Ordinance states, "[t]he following regulations shall pertain to off-premises Signs (also known as outdoor advertising signs) in all districts where permitted by this Section 744-903.F, Table 744-903-7."

32. Pursuant to Section 744-911.A (4) and (7) of the Marion County Ordinance, "No advertising sign shall be permitted which contains, includes, or is illuminated by a flashing, intermittent or moving light or lights" and "[n]o advertising Sign shall be permitted which displays video or emitting graphics." ("Digital Billboard Ban")(Marion County Ordinance, § 744-911.A (4) and (7)).

33. Thus, unless exempted or otherwise allowed, digital billboards, like the ones GEFT wishes to erect, are not allowed in Indianapolis.

**THE MARION COUNTY ORDINANCE'S CONTENT-BASED REGULATIONS**

34. The Digital Billboards that GEFT wishes to erect are each located within the I-465 loop.

35. The Marion County Ordinance bans Outdoor Advertising Signs, that display messages similar to the ones GEFT intends to display on its Digital Billboards, to be located within the I-465 loop. (Marion County Ordinance, § 744-911.A(11); *see also id.*, Sign Diagram 21).

36. Outdoor Advertising Signs are also known as Off-premises Signs. (Marion County Ordinance, § 744-911(A)).

37. As a result, unless exempted or otherwise allowed, Off-premises Signs, like the ones GEFT intends to erect, are not allowed within the I-465 loop ("Off-premises Ban").

38. However, On-premises Signs are generally allowed within the I-465 loop.

39. Whether a Sign falls within the definition of an Off-premises Sign or an On-premises Sign is based on the content of the speech contained on the Sign.

40. The Off-premises Ban applies based on the topic discussed on a Sign, or the idea or message expressed on a Sign.

41. The Off-premise Ban draws distinctions on the types of Signs that are prohibited versus those that are allowed, based on the message a speaker conveys.

42. As a result, the Marion County Ordinance favors certain types of speech and/or speakers over others.

**THE MARION COUNTY ORDINANCE IS AN UNCONSTITUTIONAL PRIOR RESTRAINT**

43. Unless exempted or otherwise allowed, a person or entity must apply for and obtain a permit prior to engaging in certain forms of speech. (Marion County Ordinance, § 744-903(B)).

44. Indianapolis' City Administrator shall interpret and enforce such provisions of the Marion County Sign Standards, and is charged with approving or denying sign permits. (Id. at § 740-802).

45. The City Administrator has the purported power to revoke a permit for a violation of the Marion County Sign Standards. (Id., § 740-810).

46. Indianapolis, in order to determine whether a Sign located within the I-465 loop is in compliance with the requirements of the Marion County Ordinance, must look to the content of the Sign.

47. To decide whether to issue or revoke a permit, Indianapolis must appraise facts, exercise judgment, and form an opinion as to whether a Sign is in compliance with the requirements of the Marion County Ordinance.

48. The Marion County Ordinance and/or Marion County Sign Standards fail to set forth criteria—such as narrow, objective, and definite standards—to ensure that the Indianapolis' permitting or revocation decisions are not based on the content or viewpoint of the speech or message.

49. The Marion County Ordinance and/or Marion County Sign Standards fail to create a permitting scheme that reduces the Indianapolis' act of granting, denying, or revoking a permit to a ministerial one, without the exercise of judgment or the formation of an opinion by Indianapolis.

50. If a person or entity cannot obtain an ILP because the proposed structure does not meet the developmental standards in Marion County Ordinance, that person or entity may seek a variance.

51. A variance is a departure from the terms on a zoning ordinance that affords the applicant relief from the strict enforcement of a zoning ordinance, and/or permits a use of the property in question that the zoning ordinance otherwise forbids.

52. Marion County Ordinance allows those who wish to erect a non-conforming Sign to seek a variance.

53. In other words, a person or entity who desires to erect a Sign but cannot get a permit because the Sign does not fall within the standards set forth in the Marion County

Sign Standards still has an opportunity to erect that Sign through the variance process. (See, e.g., BZA Rules of Procedure, Article I(4)).

54. The BZA has the power and duty to grant or deny variances of use or development standards including height, bulk, and area. (BZA Rules of Procedure, Article I(4)(C)).

55. The BZA has enacted Rules of Procedures setting forth the procedures the BZA follows including the procedures it follows in considering requests for variances.

56. A true and accurate copy of the BZA's Rules of Procedure is attached hereto as **<u>Exhibit A</u>**.

57. Per the BZA's Rules of Procedure, a use variance is "[a] variance for a use or structure that is not permitted in the zoning district." (Id., Article I(5)(A)).

58. Per the BZA's Rules of Procedure, a developmental standards variance is "[a] departure from the provisions of a zoning ordinance relating to frontage, yard, area, coverage, setback, height, size, parking, loading or other requirements of the applicable zoning district, but not involving the actual use." (Id., Article I(5)(B)).

59. The criteria the BZA considers for a variance of use are set forth in Ind. Code § 36-7-4-918.4, which states:

A variance may be approved under this section only upon a determination in writing that:

> (1) the approval will not be injurious to the public health, safety, morals, and general welfare of the community;
>
> (2) the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner;
>
> (3) the need for the variance arises from some condition peculiar to the property involved;

> (4) the strict application of the terms of the zoning ordinance will constitute an unnecessary hardship if applied to the property for which the variance is sought; and
>
> (5) the approval does not interfere substantially with the comprehensive plan adopted under the 500 series of this chapter.

60. The criteria the BZA considers for a variance from development standards are set forth in Ind. Code § 36-7-4-918.5, which states:

> A variance may be approved under this section only upon a determination in writing that:
>
> (1) the approval will not be injurious to the public health, safety, morals, and general welfare of the community;
>
> (2) the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner; and
>
> (3) the strict application of the terms of the zoning ordinance will result in practical difficulties in the use of the property. However, the zoning ordinance may establish a stricter standard than the "practical difficulties" standard prescribed by this subdivision.

61. The BZA's power and duty to grant any variance through the Marion County Ordinance is inextricably linked to other provisions of the Sign Standards.

62. The variance process allows Indianapolis a mechanism for relief from the strict enforcement of a zoning ordinance, and/or permits a use of the property in question that the zoning ordinance otherwise forbids.

63. The end result of an approved variance is the issuance of an ILP to construct whatever the applicant wishes to construct consistent with the terms of the grant of the variance.

64. To decide whether to grant a variance, the BZA must appraise facts, exercise judgment, and form an opinion as to whether a Sign complies with the variance criteria set forth *supra*.

65. The Marion County Ordinance fails to set forth criteria—such as narrow, objective, and definite standards which are to be applied by the BZA—to ensure that the BZA's variance decisions are not based on subjective standards or criteria including the content or viewpoint of the speech or message and/or on the messenger itself.

66. The Marion County Ordinance variance criteria, applicable to the BZA, are subjective and value laden, and susceptible to wide interpretation and varying differences of opinion by the members of the BZA. Those characteristics create too high of a risk that the BZA might grant or deny a variance based on whether it likes or dislikes the content or the viewpoint of a given sign, or even the person (speaker) seeking the variance.

67. The BZA also has the power to place conditions on the granting of a variance. (*See, e.g.*, BZA Rules of Procedure, Article 6(A)).

68. Neither the Marion County Ordinance nor the BZA Rules of Procedure provide guidance, objective criteria, or adequately limit the types of conditions the BZA could place in exercising its authority to grant a variance.

69. For example, the BZA's power to approve variances contingent on any condition imposed to protect "public health, safety, morals, and general welfare of the community" provides no objective guidance as to what these terms mean and does little to constrain the BZA, so much that it could impose essentially whatever conditions it wanted on a Sign through the variance process. (Id., Article I(4)(C)).

70. The Marion County Ordinance, applicable to the BZA, fails to create a variance scheme that reduces the BZA's act of granting or denying a variance to a ministerial one, without the exercise of judgment or the formation of an opinion by the BZA.

71. The lack of objective criteria means the BZA has unbridled discretion in making variance decision which allows the BZA to permit whatever speech it favors, and deny speech it disfavors.

72. The Marion County Ordinance also lacks necessary procedural safeguards including, without limitation, lacking clearly defined limits on the time within which a decision-maker must issue, deny and/or revoke a permit, and/or grant or deny a variance.

**GEFT SEEKS VARIANCES**

73. On or about September 15, 2021, GEFT submitted an application for a variance of use and variance from development standards to erect a billboard at Sherman Property. This was assigned variance number 2021-UV1-027 ("Sherman Property Variance").

74. On or about September 15, 2021, GEFT submitted an application for a variance of use and variance from development standards to erect a billboard at Sherman Property. This was assigned variance number 2021-UV1-028 ("Developer's Property Variance").

75. On or about September 15, 2021, GEFT submitted an application for a variance of use and variance from development standards to erect a billboard at Sherman Property. This was assigned variance number 2021-UV1-026 ("Kentucky Ave Property Variance") (the Sherman Property Variance, Developer's Property Variance, and Kentucky Ave Variance are collectively referred to as "Variances").

76. Digital Signs are not permitted by § 744-911 of the Marion County Ordinance unless exempted or otherwise allowed. As a result, the Variances requested sought to erect an off-premise's advertising Sign to updated, LED Digital Signs. The Digital Signs would have displayed static digital messages with hold times no less than eight (8) seconds. The Digital Billboards would have consisted of both commercial and

non-commercial message content. The Variance applications are attached collectively hereto as **Exhibit B** ("Variance Applications").

77. The BZA met to consider the Variance Applications on January 4, 2022.

78. John Kisiel and Taylor Fontan participated in the January 4th meeting on behalf of GEFT, and presented relevant evidence.

79. BZA Members Matt Boon, Eduardo Luna, Clint McKay, Peter Nelson, and Mark Young participated in the BZA meeting.

80. When Indianapolis receives a variance application, Indianapolis performs a review of the application and makes a recommendation to the BZA concerning approval of the same.

81. Prior to the BZA meeting, the DMD issued staff reports outlining its recommendation to deny the Variance Applications. A true and accurate copy of the Staff Reports are attached as **Exhibit C** ("Staff Reports").

82. The Staff Reports do not set forth any objective criteria, standards or evidence used by the Staff for recommending denial of the Variance Application.

83. On January 4, 2022, the BZA voted to deny GEFT's Variance Applications for each of the Variance requests without citing any objective criteria, standards or evidence beyond its reliance on the subjective opinions in the Staff Reports.

84. There is no substantive, objective evidence supporting the opinions put forth in the Staff Reports and/or the BZA's decision.

85. As of the date of filing, the BZA has yet to adopt findings of fact and conclusions of law supporting the denial of the Variance Applications.

## FIRST CAUSE OF ACTION

### THE MARION COUNTY ORDINANCE CONTAINS UNCONSTITUTIONAL PRIOR RESTRAINTS

86. GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

87. Indianapolis' variance and permitting schemes, as set forth in the Marion County Ordinances/Sign Standards, lack procedural safeguards with respect to Sign permitting, revocation, and variance decisions, including, without limitation, failing to set forth a definitive timeframe in which the BZA must make a permitting, revocation, and/or variance decision.

88. Indianapolis' variance scheme, including the ability to place conditions on variances, as set forth in the Marion County Ordinances/Sign Standards, lacks narrow, objective, and definite criteria for making variance decisions.

89. Indianapolis' permitting scheme lacks narrow, objective, and definite criteria for making variance decisions.

90. Indianapolis' variance and permitting schemes, as set forth in the Marion County Ordinances/Sign Standards, give Indianapolis and/or the BZA unbridled and/or boundless discretion to determine whether and/or when to permit, revoke, or deny expressive activity including both commercial and non-commercial speech.

91. Indianapolis' variance and permitting schemes, as set forth in the Marion County Ordinances/Sign Standards, leave the decision whether to grant, deny, or revoke a permit and/or variance request, and/or the time period in which to do so, to Indianapolis' and/or the BZA's whim.

92. Indianapolis' variance and permitting schemes, as set forth in the Marion County Ordinances/Sign Standards, contain unconstitutional prior restraints on speech.

93. As an unconstitutional prior restraint on speech, the Marion County Ordinances, as applicable to the Marion County Ordinances/Sign Standards, violate the United States Constitution, including, without limitation, the First and Fourteenth Amendments.

94. As an unconstitutional prior restraint, the Marion County Ordinances violate the Indiana Constitution, including, without limitation, Article I, § 9.

95. As an unconstitutional prior restraint, Indianapolis' variance and permitting schemes, as set forth in the Marion County Ordinances/Sign Standards are arbitrary, capricious, and/or unfounded; and otherwise results in the arbitrary deprivation of GEFT's (and those similarly situated) vested property rights/interests without due process of law.

96. Indianapolis's variance and permitting schemes, as set forth in the Marion County Ordinances/Sign Standards, do not sufficiently constrain official discretion.

97. As an unconstitutional prior restraint, the Marion County Ordinances/Sign Standards violate GEFT's (and those similarly situated) civil rights.

98. Indianapolis would not have enacted the Marion County Ordinance without the inclusion of the Sign permitting, variance, and revocation process.

99. Because Indianapolis would not have enacted the Marion County Ordinance and/or the Sign Standards without the inclusion of the Sign permitting, variance, and revocation process, a determination of unconstitutionality as to those provisions renders Section 744 and the Marion County Ordinance unconstitutional in their entirety.

100. GEFT has been damaged by Indianapolis's abridgement of GEFT's constitutional rights.

101. Based on the foregoing, GEFT seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Marion County Ordinances and Sign Standards

unconstitutional on their face and as applied, and enjoining Indianapolis from enforcing any portion of Section 744 and its variance process against GEFT, and compensatory damages, pursuant to 42 U.S.C. § 1983, in a sum to be determined at trial.

## SECOND CAUSE OF ACTION

### THE MARION COUNTY ORDINANCE CONTAINS UNCONSTITUTIONAL CONTENT-BASED REGULATIONS

102. GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

103. The First Amendment of the United States Constitution, as applied to the States and their political subdivisions through the Fourteenth Amendment of the United States Constitution, protects a citizen from being punished by a governmental entity or individual acting in his or her official capacity as an agent of that governmental entity, because of said citizen's exercise of free speech. GEFT possesses those rights.

104. Article I, § 9 of the Indiana Constitution guarantees Indiana citizens the same rights guaranteed by the First Amendment to the United States Constitution. GEFT possesses those rights.

105. The Marion County Sign Standards have established unconstitutional content-based restrictions on speech.

106. For example, the Marion County Sign Standards, through the Off-premises Ban on off-premises signs within the I-465 loop, improperly favor certain types of speech over others based on the topic discussed on a Sign or the idea or message expressed on a Sign.

107. The Off-premises Ban impermissibly draws content-based distinctions on the types of Signs that are prohibited versus those that are allowed, based on the message a speaker conveys.

108. The Off-premises Ban also requires the City to examine the content of a Sign to determine whether a Sign is banned.

109. The Off-premises Ban is unconstitutional on its face, and as applied to GEFT, because Indianapolis has failed to, and cannot, articulate a compelling and/or substantial governmental interest in providing standards applicable to Off-premises Signs distinct from the standards applicable to On-premises Signs.

110. The Off-premises Ban is unconstitutional on its face, and as applied to GEFT, because Indianapolis has failed to, and cannot, narrowly draw restrictions based on distinctions between prohibited and allowed Signs in a manner to directly advance any purported governmental interest.

111. Indianapolis would not have enacted the Marion County Sign Standards without the inclusion of the Off-premises Ban.

112. Because Indianapolis would not have passed the Marion County Sign Standards without the Off-premises Ban, a determination of unconstitutionality as to the Off-premises Ban renders the entire Marion County Sign Standards unconstitutional.

113. GEFT has been damaged by Indianapolis' abridgement of its constitutional rights.

114. Based on the foregoing, GEFT seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Marion County Sign Standards unconstitutional on their face, and enjoining Indianapolis from enforcing any portion of the Marion County Sign Standards against GEFT or others, and compensatory damages, pursuant to 42 U.S.C. § 1983, in a sum to be determined at trial.

## THIRD CAUSE OF ACTION

### PETITION FOR REVIEW OF BZA DECISION

115. GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

116. The names and address of the petitioner, GEFT, and the BZA and the identity of those who participated in the BZA's decision are all set forth above and incorporated herein by reference.

117. On January 4, 2022, the BZA denied the Variances for the Properties.

118. GEFT has standing to appeal the BZA's denial because, without limitation:

a. The zoning decision is specifically directed at GEFT, and GEFT has an interest in the Digital Billboards;

b. GEFT is aggrieved or adversely affected by the zoning decision;

c. The Marion County Ordinance does not require an administrative appeal of a BZA decision;

d. GEFT has sought judicial review timely; and

e. GEFT will timely transmit the board record, or seek an appropriate extension, as required by Ind. Code § 36-7-4-1613.

119. The BZA possesses unbridled discretion in approving or denying variance requests, including the Variances, because the Marion County Ordinances lack objective criteria of any type to be used by the BZA in making its decision for the approval or denial of a variance and because its lacks necessary procedural safeguards.

120. The Marion County Ordinances leave the decision whether to grant, deny, or revoke a variance, and the time period in which to do so, to the BZA's whim.

121. The Marion County Ordinances contain unconstitutional prior restraints on speech.

122. The BZA's denial of the Variances is an impermissible prior restraint on speech.

123. As an unconstitutional prior restraint, the Ordinance violates the United States Constitution, including, without limitation, the First and Fourteenth Amendments.

124. The BZA's decision was:

a. Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

b. Contrary to GEFT's First Amendment Rights;

c. In excess of the BZA's statutory authority; and/or

d. Unsupported by substantial evidence.

125. The BZA's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law as evidenced by its reliance on unconstitutional variance criteria.

126. Likewise, the BZA's decision is unsupported by substantial evidence because it cannot point to any objective evidence that demonstrates GEFT's failure to meet the variance criteria.

127. Because of the BZA's improper decision and the other constitutional infirmities in the Marion County Ordinances, GEFT is precluded from exercising its First Amendment rights.

128. Pursuant to Ind. Code § 36-7-4-1003, GEFT requests this Court overturn the BZA's denial of the Variances and instruct the BZA to approve and issue the Variances.

**DEMAND/PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs GEFT OUTDOOR, L.L.C., by counsel, respectfully requests a Judgment for the following relief:

A. On the First Cause of Action, for an Order and Judgment pursuant to 28 U.S.C. § 2201 declaring Chapter 744 of the Marion County Ordinance and variance process to be unconstitutional on their faces and as applied and

enjoining Indianapolis from enforcing Chapter 744 of the Marion County Ordinance and its variance process, now or at any time in the future, against GEFT and others, and an award of compensatory damages, pursuant to 42 U.S.C. § 1983, to be determined at trial;

B. On the Second Cause of Action, for an Order and Judgment pursuant to 28 U.S.C. § 2201 declaring Chapter 744 of the Marion County Ordinance to be unconstitutional on its face and as applied and enjoining Indianapolis from enforcing Chapter 744 of the Marion County Ordinance, now or at any time in the future, against GEFT and others, and an award of compensatory damages, pursuant to 42 U.S.C. § 1983, to be determined at trial;

C. On the Third Cause of Action, for an order overturning the BZA's denial of the Variance and instructing the BZA to approve and issue the Variances, which would allow GEFT to erect the Digital Billboards;

D. For an award to GEFT of costs, disbursements, and reasonable attorneys' fees and expert fees incurred by GEFT in connection with this action pursuant to 42 U.S.C. § 1988; and

E. All other relief just and proper in the premises.

I swear or affirm under the penalties of perjury that the foregoing factual allegations concerning GEFT's request for a variance and request for judicial review are true and accurate to the best of my knowledge and belief.

Jeffrey S. Lee
On behalf of ***GEFT Outdoor, LLC***

Respectfully submitted,

LEWIS WAGNER, LLP

*/s/ A. Richard M. Blaiklock*
A. RICHARD M. BLAIKLOCK, #20031-49
TAYLOR L. FONTAN, #35690-53
*Counsel for GEFT Outdoor, L.L.C.*

LEWIS WAGNER, LLP
1411 Roosevelt Avenue, Suite 102
Indianapolis, Indiana 46201
Phone: 317-237-0500
Fax: 317-630-2790
Email: rblaiklock@lewiswagner.com
tfontan@lewiswagner.com